Now to Case No. 5, Helen Frazier-Hill v. CTA, et al. This is Appeal No. 22-1609. And we'll hear from Mr. D'Alba when you're ready. They have pleased the court. I'm Joel D'Alba. I represent the plaintiff, Helen Frazier-Hill, in this ADA case. With all due respect to the district court, there's no deference to be accorded to district court's findings of fact. That's the law of this circuit. The circuit court is to give a fresh look to this case. All reasonable inferences are to be drawn in favor of the plaintiff, the non-moving party, on the CTA's motion for summary judgment. This is a jury question. Was she disabled? It's not the role of the court to decide if she was actually disabled under the ADA. It's the role of the court to decide only whether a rational jury, viewing any conflicting evidence and the like most favorable to the plaintiff, could so decide. The district court did exactly the opposite. Quote, it doesn't matter whether the CTA and Hampton disputed her medical history. What matters is whether Frazier-Hill presented evidence that her carpal tunnel substantially limited a major activity. That's the opinion at page 80. So the question is, did she present enough evidence? The answer is she did present evidence in terms of occupational therapy reports. The court went on to say, a plaintiff must show the impairment that substantially limits a major life activity. The inquiry is whether the plaintiff's condition constitutes an impairment, whether the activity upon which the plaintiff relies constitutes a major life activity. That goes to the merits of the case. Quote, Frazier-Hill argues that her carpal tunnel substantially limited her ability to work, reach, and lift. She points to a collection of material in the record, including doctor's notes about her work restrictions and about her pain, occupational therapy reports, and her remission to area 605, which is a disability area. However, none of this evidence shows carpal tunnel substantially limited her major life activity in 2018. That's also a jury question. Let the jury decide that. Mr. DiAlba, what is, I think this is a question for our court with our fresh look. What's the relevant time frame in your view? 2016 or 2018? I think the relevant time frame is 2016. And here's how it started in our brief before the district court. Page 2 of the motion. Which of your briefs? It's the brief on the memorandum in support of the motion for summary judgment. It's docket 132-1 at page 2. First sentence of the first paragraph. Medical reports prepared by plaintiff's doctor between April 12, 2016 to August 1 of 2019 consistently show she suffered from bilateral carpal tunnel syndrome and that has been treated multiple times. I want to point out, Judge, the district court looked only at her left hand. She had carpal tunnel in both hands. This affected her for the entire period of time from 2016 to 2019. In the complaint that we filed, there are several references to what happened in 2016. Paragraph 36. At all relevant times, she's had a disability. That includes this entire frame of 2016 to 2019. That's at paragraph 37. Paragraph 39. The 2016 alleging, in 2016, the CTA was aware of plaintiff's disability since at least CTA has been aware, since at least 2016, CTA has been aware of her disability. Paragraph 40. CTA discriminated against plaintiff by not making reasonable accommodations. Paragraph 38. At all relevant times, her end plaintiff has been qualified to perform the essential functions of the job. So it's our position that this issue of 2016 is important because this is a condition that comes and goes. It's a condition, as she said to her occupational therapist in 2018 when she asked, how are you doing? How is the pain? How are the issues that you're handling? She said it comes and goes. So your position is you're challenging the 2018 denials only, but what happened in 2016 is relevant. Yes, but I also have challenged the 2016 matters because in a case called Masio, the 11th Circuit wrote regarding the statute, this is a matter that could recur. But in your Fourth Amendment complaint, the only denials mentioned are the 2018 denials. Correct. And that's all that's discussed in the summary judgment briefing. I think in the summary judgment briefing, we also referred to the issues that arose from 2016. You do mention it. You disavowed the 2019 in the briefing, and then your response to the defendant's motion for summary judgment is silent about 2016. I think in the 2016, in the early pages of the reply brief, we referred to the fact that she had problems for this whole period of time. In a case called Masio, an 11th Circuit case, we're relying upon a piece of the statute that says a disability, an impairment that is episodic or in remission is a disability if it would substantially limit a major life activity when active. And what the judge did was disregard the 2016 issues, looked only at the 2018 issues. And it's our view that the occupational therapy reports show that she has these ongoing problems and under the statute and under Masio, this is something that should be considered. So I can understand how the district judge might not have focused on 2016 given the way the briefs set this up. And in 2016, as I understand it, plaintiff was able to use her seniority to drive only the standard buses, correct? Correct. She used her seniority to do that and the supervisors allowed her to do that. Right. Why did she not try to do that in 2018? They wouldn't let her. Who wouldn't let her? The CTA. She asked for an accommodation in February. Why didn't she just ask for the, use her seniority to bid for standard bus routes only? She asked that. It was denied. Where do we have that? It's in the record. There's deposition testimony from Ms. Hampton and it's in our briefing. I can't tell you exactly the page, but it's there. I understand. Well, okay. If you can tell us in rebuttal, that would be helpful because frankly, given the briefing here, it's hard to understand what the parties are actually disputing. Well, among other things, they're disputing whether this is an essential job. Then I understand the question is whether the plaintiff could have simply taken care of her own problem in 2018 by doing what she did in 2016. They wouldn't want her on the job. I will find that page. May I have the rest of the time for rebuttal? Mr. Elbow, could I just ask one question before you sit down? She had surgery in September 2017, right? Correct. Her doctor team did a successful surgery and then afterwards, we have this January 18 work status report that didn't have any restrictions on it. What are we to make of that with regard to all of the issues? It seems to me that the judge below focused on that to talk and as the parameter to set everything up. Well, first, she continued to have pain. She went to an occupational therapist in April of 2018 who said that she would have trouble carrying a shopping bag and washing her back. That deals with reaching. You can't wash your back unless you're reaching and you can't carry a shopping bag unless you're lifting. So she continued to have problems in 2018 and with respect to the 2019 issue, Judge Hamilton, her doctor specifically wrote a note that said she would be restricted to heavy lifting. So even if her accommodation request in 2019 should not be considered, that evidence should be considered in the context of this ongoing issue of remission and then ebbing and flowing, which is what the statute provides for. Okay. Thank you, Mr. Diallo, and we'll give you some rebuttal, additional rebuttal time. We'll now hear from Ms. Dimitrieva, and please correct my pronunciation. Good afternoon, Your Honors, and may it please the Court. I am Irina Dimitrieva on behalf of the Chicago Transit Authority. Your Honors, this Court should affirm summary judgment on the plaintiff's failure to accommodate claim in favor of the Chicago Transit Authority for two key reasons. First, as the district court correctly held, plaintiff failed to elicit adequate evidence for a reasonable jury to conclude that she has a disability within the meaning of the ADA. And second, and alternatively, plaintiff failed to demonstrate that she is a qualified individual entitled to ADA protections. Specifically, she failed to show that she can perform the essential function of her job, operating a CTA bus with an accommodation that is reasonable on its face. First, while it is true that the ADA Amendments Act expanded the definition of disability and the term substantially limits, it is equally true that the word substantially remains in the statute. And the courts who grappled with the construction, and even in cases that plaintiff cites in her briefs, reasoned that the word substantially has to be given some meaning. It cannot be superfluous. And therefore, not just any limitation would suffice to constitute a disability. And as the federal regulations explain, an impairment is a disability only if it substantially limits an ability of an individual to perform a major life activity as compared to most people in the general population. And so applying these standards on the record as it exists right now, after a full-blown discovery, no reasonable jury could find that plaintiff's carpal tunnel syndrome substantially limited her abilities to lift and to reach, which are the only functions that she discusses on appeal. To begin with, there is no medical document in the record that imposes any lifting or reaching restrictions on the plaintiff. And yet we have multiple work status reports in the record and also attending physician statements that specifically ask her treating physician to indicate whether she has any work restrictions such as lifting, carrying, pushing, pulling, overhead work, use of right or left hand. And in none of these work status reports, her treating physician checked any of these boxes. So what do we make? In page nine of your brief, you say this is after she has had the surgery. Top of the page nine, you write, but because Fraser Hill had a medical restriction, the only way she could return to active duty was by seeking and receiving a reasonable accommodation. Yes. And this is to answer... How is that consistent with saying she doesn't have a substantial disability? And this is to answer your honest question posed to the plaintiff's counsel, what is at issue here. The only medical restriction that your physician imposed is not to drive articulated buses. And so when she submitted the request for reasonable accommodation supported with this restriction, not to ride articulated buses, the Accommodations Review Committee followed up with letters to her physician asking, can you please explain what exactly prevents her from driving an articulated bus? Because our instructions department and bus engineering department informs us that it's the same, driving both buses. And so the medical restriction here is not actually illuminating on the functions of her physical functions that are restricted, because it says she cannot drive the bus. That doesn't explain anything as to what function of her body is affected. And that was not explained. Because what she's arguing here is lifting and reaching. I understand that, I think, so far. But it sounds like your committee, though, was saying, well, if your doctor says this, and we have to respect that, then you can't drive articulated buses. Right? Yes. I mean, there's case law, I think, that's clear that if there is a restriction not to do certain things coming from a doctor, we have to respect it. Right. And so maybe this goes to your second point. But if she's got a doctor telling her, and you all are saying, we can't give you certain work assignments. Right. But driving an articulated bus is not a major life activity. I mean, they pursued an argument below saying she's restricted in a major life activity of working, which the district court held under the law, evidence is not sufficient because she's not restricted in working. She wants to work as a bus driver. She affirmatively states, I can't drive a 40-foot bus. I just prefer not to drive a 60-foot bus. So what function, what is major activity we're talking about here? The only major activity that your restriction relates to is driving an articulated bus, which is not a recognized major life activity. I didn't take the CTA's response to the medical restriction letters to be, since you have this medical restriction, you can't drive articulated buses. I took the CTA's response to be, since you claim to have this medical restriction, you can't drive buses at all because we can't divvy up articulated, non-articulated. Yes. And that is the position that if she's taken at your word that she, in fact, cannot drive an articulated bus, it is an essential function of any CTA operator to be able to operate any bus in the CTA fleet. Why is that? I'm very troubled by that argument because we have repeatedly rejected such arguments, including involving bus drivers in a case called Brown against Smith. Yes. And I'm aware of your order. In Brown against Smith, it involved a street supervisor of City of Anderson Transit Authority. And there was evidence in the record that it was not his primary duty to drive buses. In fact, he was a supervisor and he worked for four years without ever driving a bus. So consistent with your interpretive guidance on what is a reasonable accommodation, marginal duties of position could be restructured and reallocated. But the law does not require an employer to ever reallocate essential function of the position. Well, that begs the question. Yes. An essential function of the position, according to Code of Federal Regulation, is the principal function for which the position exists. Right. Now, the question, though, is we've had repeated cases in Brown against Smith. I appreciate your command of the specific facts of that case. But the more general principle, in essence, is that the ADA requires some flexibility of employers in figuring out even what is an essential function. And we have repeatedly dealt with employers who have said, in essence, our jobs as managers are a lot easier if every employee is able to do multiple jobs. Right? And we've said, no. The ADA requires you to do an individual evaluation. And Miller against Department of Transportation, Tate against Dart addressed this. Yes. And that situation, a lot of teamwork. What we have here, Your Honor, is not teamwork. Right. So what about the situation in 2016 when she's just using her seniority to drive only standard buses? She came to work without any medical restriction. So she was cleared to come back to work with no medical restriction. And then she exercised the seniority rights. Right. So why couldn't she do that in 2018? If she did not have any medical restriction, she could. But she did have medical restriction. And what she herself testified is that, and what is important to understand, as a part of the collective bargaining and system-wide pick process, bus operators pick a route. They pick a garage and a route. They don't pick a specific bus. And the evidence in the record is very clear that it's not uncommon. So what happens is the bus operators come to the terminal every morning before they shift, and the dispatcher assigns them a bus. And the type of the bus that gets assigned depends on customer needs. Ms. Fraser-Hill testified that, for instance, in December 2015, when she did pick a route based on her seniority that ordinarily operated only standard buses, she nonetheless was required to operate longer articulated buses in the morning. So 20% of the time she operated articulated buses, 80% of the time she operated standard buses. She also testified that even if she picks a garage or route that normally operates standard buses, if they assign to her an articulated bus, she has to do it. And in her reply brief, her solution to that issue, that just exercising her seniority, right, does not solve her problem. Because even if she picks a garage, she picks a route that ordinarily does not operate normal buses, and the evidence is undisputed that all bus operators are trained and expected to be able to operate articulated buses. So I think on page 20 in her reply brief, she acknowledges that if the CTA were to replace a standard bus on her route with an articulated bus, she would have to swap shifts with a different employee or to take paid time off to avoid driving the articulated bus. So what is Ms. Fraser-Hill to do? Because she's in a, it's more than a catch-22. She's caught on three sides. Under CTA's rules, she can't work if she's got this medical restriction, okay? And she can't use her seniority to just drive the type of bus she wants to drive because of the restriction, the medical restriction according to CTA. And then ultimately, after she exhausts the three-year process, the name is escaping me where you're on this kind of disability leave. Area 605. There we go. Yes. Then she's not called back to work, but yet she can't get a disability agreement from CTA because CTA doesn't agree that she's disabled based on this carpal tunnel. I mean, it's in court contesting. No, that is not clear to me. CTA's position in court is that she's not disabled because she's not substantially limited in a major life activity of reaching or working. Right now, yes. That's all I'm referring to. Yes. That's all I'm referring to. Yes. Well, our position is based on the lack of any medical restriction on her lifting or reaching ability, none. And so it's based on the documents. And there is a lot of evidence that obviously, you know, the cherry pick, for instance, why they didn't want to introduce any in the summary judgment. They wanted to prevent us to cite any medical documents from 2019 because they show zero functional limitation, grip strength five and five bilaterally. So according, there was a specific job specific occupational therapy evaluation done in December 2019 that showed zero functional limitation, gripping, lifting, reaching. She could do everything. The grip strength was five by five. So she, you know, but we don't want to go there because, you know, she argued below medical evidence from 2019 should be inadmissible because it's beyond the scope of her complaint. Now it's convenient to talk about disability. She wants to cite maybe some, you know, random medical document from 2019 that does talk about a certain limitation. But the position remains that limitation has to be substantial. There is absolutely zero evidence on which a reasonable jury could conclude that a limitation, like if we take the evidence and like most favorable to her, those two occupational reports possibly say there was a limitation. But they don't illuminate that this limitation is substantial as compared to most people in the general population. So yes, there is no disability. I mean, the only way to answer Yolanda's question for her, you know, which was discussed over the years at multiple points in time, is to do the same as she did in 2016, is to come back to work without any medical restriction and to exercise her seniority rights. But if we're taking her physician at her word that somehow the vibrations in the bus, you know, affect her, then she would have the same problem with the 40-foot bus because she was asked at her deposition, what, we're here dealing with Chicago streets. There are bumps on the road. You know, would it cause vibrations? Yeah. It would cause vibration on standard bus too. They could be new. They could be old. There could be all sorts of issues that could, you know, cause possibly vibrations and stronger gripping on the wheel. So for us, for the CTA, your doctor is saying it's a problem for her, you know, with vibration. Well, you know, that could be the same problem on the standard bus as well. Thank you. Thank you. I'm sorry I exceeded my time, though. Mr. D'Alba will give you the three minutes. First, the substantial limitation question is really a jury question as to how bad things really are. In answer to Judge Hamilton's issue, here's what happened in 2016. Her own doctor said you can go back to work. You should only be driving the standard bus. Their doctor said you're medically cleared. At the same time that their doctor said she was medically cleared, the Accommodation Review Committee said, we're not going to give you an accommodation because you don't have the appropriate medical basis to come back to work. So how is a jury going to deal with this? There are three inconsistent issues with respect to how she went back. She goes back to work. She starts driving a standard bus for the next 11 months. Her supervisors know about it, and nobody cared. Nobody objected to it. In terms of where she could drive, she was asking in February, and that's on page 20 to 21 of our reply brief, she went in and said to Ms. Hampton, I want to go back to work. Ms. Hampton said, Frasier Hampton said, I want to be able to pick a garage that doesn't have articulated buses. At that time, there were four garages that didn't have articulated buses. She could have driven garages from Forest Glen. She could have driven, I'm sorry, she could have driven buses from Forest Glen. She could have driven buses from Chicago Avenue. And so what did Hampton say? Hampton told me, I would not be back. I won't be able to pick. Hampton didn't give me a reason other than to say, if I can drive a bus, I can drive both buses. There's a factual question as to whether or not it's essential to be able to drive, essential job function is to be able to drive both buses. With respect to the question of bus routes, undisputed, there are about a dozen bus routes that do not take articulated buses because of the narrow turns. She could have driven on any one of those. With respect to the question of medical restrictions, her doctor consistently said, I don't want you driving an articulated bus. And they just said, we think you should be able to drive both buses. And that's a factual question as to whether or not that's an essential job. It's a question for the jury. There's a section of the CFR, 1630.2JII. I'm going to quote, The primary object of attention in cases brought under the ADA should be whether covered entities have complied with their obligations and whether discrimination has occurred, not whether an individual's impairment substantially limits a major life activity. Here the judge said it was substantial, and that's a factual question. He took it from the jury. And I think that's why this case should be reversed. Thank you. Okay. We think both parties.